JJD:RAT
F.#2010R00014

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

GROUP I DEFENDANTS,

- - - - - - - - - - - - - - - - - X

10-CR-074 (S-3)(JFB)

### GOVERNMENT'S REPLY MEMORANDUM IN SUPPORT OF AN ANONYMOUS AND PARTIALLY SEQUESTERED JURY AND MEMORANDUM IN OPPOSITION TO PRADO'S CROSS-MOTION FOR A CHANGE OF VENUE

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722

John J. Durham
Raymond A. Tierney
Assistant U.S. Attorneys
    (Of Counsel)

## PRELIMINARY STATEMENT

On April 22, 2011, the government filed a memorandum of law requesting an anonymous and partially sequestered jury ("Govt. Mem.")[1] at the trial of the Group I trial defendants GIOVANNI PRADO, ERICK ALVARADO, ELENILSON ORTIZ, FRANCISCO RAMOS and WILBER AYALA-ARDON (hereinafter, the "Group I Defendants").[2] Specifically, the government requested that the names, addresses and places of employment of the prospective jurors not be revealed to either the parties or their attorneys. Govt. Mem. 1-15. Further, the government requested that, from the time each juror survives any challenges for cause and peremptory challenges until the end of the trial, the jurors be directed to park their vehicles in the federal employee parking lot in the rear of the courthouse, and to enter and exit the building through its rear entrance. Id.

Pursuant to memoranda dated April 29, 2011 and May 9, 2011, counsel for PRADO and ALVARADO, respectively, set forth their objections to the use of an anonymous jury. See April 29, 2011

---

[1] During an April 4, 2011 status conference, the government informed the Court and defense counsel that it would be requesting an anonymous and partially sequestered jury and the Court directed defense counsel to inform the government whether they would consent or oppose such jury. Pursuant to letters dated April 7, 2011 and April 17, 2011, counsel for ALVARADO and PRADO, respectively, registered objections to the use of an anonymous jury. See April 7, 2011 Letter from Robert Moore, Esq. ("Alvarado Letter"); April 17, 2011 Letter from Scott Fenstermaker, Esq. ("Prado Letter"). ALVARADO consented to the partial sequestration of the jury. See Alvarado Letter, FN. 1.

[2] The government's initial motion also related to Group I Defendants WALTER FLORES-REYES and EFRAIN ZUNIGA. However, those defendants subsequently pled guilty.

Letter from Robert Moore, Esq. ("Alvarado Memorandum"); May 9, 2011 Memorandum from Scott Fenstermaker, Esq. ("Prado Memorandum"). ALVARADO consented to the partial sequestration of the jury, but PRADO objects to partial sequestration as well.   <u>See</u> Alvarado Memorandum at fn. 1; Prado Memorandum at 1-2.

      For the reasons set forth below, as well as the reasons set forth in the government's initial memorandum, the government respectfully requests that the Court empanel an anonymous and partially sequestered jury in the trial of the Group I Defendants. Additionally, the government submits that PRADO's request for a change of venue should be denied.

ARGUMENT

POINT I

AN ANONYMOUS JURY IS APPROPRIATE IN THIS
INSTANCE GIVEN THE NATURE OF THE CHARGES AGAINST THE
DEFENDANTS AND THEIR AFFILIATION WITH THE MS-13 STREET GANG

As set forth in the government's initial request for an anonymous and partially sequestered jury, these protective measures are necessary due to: (a) the serious nature of the crimes charged, which include violent crimes directed at perceived rival gang members, innocent civilians, and anticipated government witnesses; (b) the Group I Defendants' membership in La Mara Salvatrucha street gang, also known as the "MS-13" (referred to hereafter as the "MS-13"); (c) the fact that repeated efforts have already been made to obstruct justice in this case by the defendants and their fellow MS-13 gang members and associates; and (d) the fact that countless MS-13 members remain at liberty on Long Island and elsewhere.  Govt. Mem. at 6-10.

Notwithstanding the objections raised by PRADO and ALVARADO, in their respective oppositions, the government submits that the proposed measures are necessary to assure the public's right to a fair and impartial trial by protecting the jury from interference and intimidation.  These precautions will not deprive the defendants of their right to meaningful jury selection, nor diminish the presumption of innocence.  The defendant's arguments

3

against an anonymous jury set forth in their respective memoranda
in opposition are unavailing for the reasons set forth below.

A.   The MS-13 Street Gang Has Evinced Both a Clear Intent
     And Capability to Interfere With the Judicial Process

     As set forth in the government's initial memorandum,
all of the factors outlined by the Second Circuit in the
applicable cases support the government's application in this
case.  Govt. Mem. at 6-10; see also United States v. Gotti, 459
F.3d 296, 345-46 (2d Cir. 2006); United States v. Aulicino, 44
F.3d 1102, 1116-17 (2d Cir. 1995); United States v. Wong, 40 F.3d
1347, 1376-77 (2d Cir. 1994); United States v. Paccione, 949 F.2d
1183, 1191-93 (2d Cir. 1991).  However, the most compelling
reason for an anonymous and partially sequestered jury in this
case may be the numerous attempts by the Group I Defendants, and
other MS-13 members and associates, to interfere with the
judicial process in this case.

     Contrary to Prado's assertion that the government's
arguments are lacking in evidentiary support, see Prado
Memorandum at 4, several judges in this courthouse found probable
cause of witness tampering and/or witness retaliation and
authorized arrest warrants, after hearing the applicable
evidence.  Additionally, the grand jury has repeatedly returned
indictments charging the defendants, as well as their associates,
with witness tampering, witness retaliation and obstruction of
justice.  Still further, a number of MS-13 members and associates

have already pled guilty to witness tampering and witness retaliation charges.

As defense counsel are aware, in order to establish both the respective Group I Defendants' guilt and two of the racketeering activities alleged in the Third Superseding Indictment, witness tampering and witness retaliation, the government will introduce evidence at trial regarding the following incidents:

(1)   Between November 2009 and December 2009, ORTIZ attempted to intimidate, threaten and corruptly persuade John Doe #6 so that he would not testify in a federal grand jury proceeding in Central Islip concerning the El Cibao assault and attempted murder committed by PRADO, ORTIZ and ALVARADO.   See Third Superseding Indictment, Counts 36-40.

(2)   Between January 2010 and March 2010, former Group I Defendant, EMILIO SABALLOS intimidated John Doe #7 and John Doe #8, in an effort to deter them from testifying against PRADO, ORTIZ and ALVARADO.   On April 18, 2011, SABALLOS pled guilty to Count One of the Third Superseding Indictment (Racketeering) and admitted to committing witness tampering on behalf of the MS-13 gang to prevent cooperation with the instant federal investigation, as well as conspiring to distribute cocaine. Third Superseding Indictment, Count 1 (Racketeering Acts 1 and 14); Count 41.   John Doe #7 and John Doe #8 witnessed the assault

5

and attempted murder of John Doe #6 that PRADO, ALVARADO and ORTIZ are charged with having committed. Third Superseding Indictment, Counts 36-39.

(3) On January 3, 2011, Group I Defendant JOSE SALAZAR ERAZO pleaded guilty to witness retaliation, in connection with a baseball bat assault on John Doe #7 on May 30, 2010. As set forth above, John Doe #7 witnessed the November 21, 2010 attempted murder and assault of John Doe #6, which PRADO, ALVARADO and ORTIZ are charged with committing. ERAZO allocuted that the baseball bat assault was done in retaliation for John Doe #7's perceived cooperation with the government in connection with that incident.

(4) Between September 2010 and December 2010, RAMOS, together with other MS-13 members, conspired to murder three individuals for the purpose of preventing them from cooperating with law enforcement and testifying regarding assaults committed by RAMOS, PRADO and other MS-13 members. Third Superseding Indictment, Count 68.

(5) In November 2010, ORTIZ and trial Group III defendant, DAVID VALLE attempted to intimidate, threaten and corruptly persuade a federal witness, who was identified as John Doe #12 in the Third Superseding Indictment, not to testify against members of the MS-13 in connection with the murder of Jairo Vasquez. Third Superseding Indictment, Count 67.

(6)     In December 2010, RAMOS was informed, by other MS-13 members and associates, that he should not trust John Doe #11, with whom he had repeatedly discussed murdering three witnesses that he expected to testify against him.     On December 8, 2010, RAMOS threatened John Doe #11 for his perceived cooperation with the government.  When Corrections Officers at NCCC removed RAMOS from that unit for his protection, and searched RAMOS's cell they recovered a prison shank.  Third Superseding Indictment, Count 70.

(7)     On April 11, 2011, John Doe #11 was in the visiting room at the Nassau County Correctional Center ("NCCC") meeting with a visitor.  While John Doe #11 was seated at one of the tables in the visiting room, ORTIZ walked past him and stated, in sum and substance, "You ratted on me.  You are a rat.  You ratted on me good."   John Doe #11 will testify that he construed these statements by Ortiz to be threatening given both their context and the fact that they were delivered publically in the jail.

(8)     On May 3, 2011, notwithstanding the fact that a separation order had been entered between RAMOS and John Doe #11, RAMOS was inadvertently relocated into John Doe #11's dormitory at the NCCC.  When RAMOS saw John Doe #11, RAMOS immediately charged at John Doe #11, punched him in the face and grabbed him by the throat.  Corrections officers, who witnessed the attack, quickly separated the two inmates.  Before they were separated, RAMOS inflicted injuries on John Doe #11, including giving him a swollen

7

lip and scratches on his throat.   During, and immediately following, the attack, RAMOS made a number of statements directed at John Doe #11, including, in sum and substance: (a) you are a fucking "chota rata" (which roughly translates to English as "snitching rat"); (b) you gave me, "Shorty" [ORTIZ] and "Niño"[1] new charges; (c) you set me up on the video with the Colombian and gave me up about my weapon [the shank referenced in Count #70 of the instant third superseding indictment]; and (d) "we're going to get you and kill you, you rata."

These instances, when taken together, clearly demonstrate the MS-13's concerted efforts to obstruct justice.   Accordingly, given these continued attempts to subvert the judicial process, both by the Group I Defendants themselves, as well as by other MS-13 members and associates for the benefit of the Group I Defendants, an anonymous and partially sequestered jury is appropriate in this case.

B.   Defendants' Opposition to Anonymous Jury is
     Unavailing

Contrary to the defendants' assertions, see Prado Memorandum at 7, Alvarado Memorandum at 3-4, the government need

---

[1]   The reference to "Niño" relates to Group III Defendant, DAVID VALLE, also known as "Niño" and "Oreo," who was charged with ORTIZ in Counts 1-2 (Racketeering Acts 21-22) and Count 67 of the Third Superseding Indictment.   Because VALLE was also charged in connection with the murders of Santos Castillo-Martinez and Jairo Vasquez, and is death penalty eligible, he was transferred into Group III.

not show that any of the Group I Defendants tampered with a jury in the past in order to show a "strong reason" for empaneling an anonymous jury. United States v. Paccione, 949 F.2d 1183 (2d Cir. 1991). Rather, past instances of interference with the judicial process that do not include jury tampering can be sufficient cause to empanel an anonymous jury. See, e.g., United States v. Rivera, 60 Fed. Appx 854, 857 (2d Cir. 2003)(although none of the Latin King gang members on trial had history of jury tampering, the gang's "overall disregard for the judicial process" warranted anonymous jury); United States v. Wong, 40 F.3d 1347 (2d Cir 1994)(trial evidence would show that Green Dragons were violent street gang with history of interference with judicial process and gang members sought to silence witnesses, which, among other factors, were enough to warrant anonymous jury). Additionally, an anonymous jury can still be an appropriate remedy even where not all of the trial conspirators have been charged with witness tampering. United States v. Vario, 943 F.2d 236 (2d Cir. 1991). In Vario, an anonymous jury was empaneled even though the defendant did not himself personally interfere with the judicial process. Id. The Court held that, as the co-conspirator's tampering with a grand jury witness was done in furtherance of the charged conspiracy, it was both admissible as evidence against all the conspirators and demonstrated the ongoing willingness of the conspirators to tamper with the judicial process. Id. at 240.

Prado alleges that "the government's argument in support of its application for an anonymous and partially-sequestered jury relies solely upon the allegations contained in the indictment and conclusions untethered to evidentiary support[.]" Prado Memorandum at 4. This statement is plainly incorrect. While much of the government's application is based on conduct contained within the instant indictment and charges involving the same defendants that will be before the Court, that is not all of the evidence. Further, far from being "untethered by any evidentiary support," as PRADO asserts, these allegations regarding interference with the judicial process were presented to the grand jury, who returned true bills of indictment. Second Superseding Indictment, Counts 40-42 and Third Superceding Indictment, Counts 1, 40, 43, 51 and 67-70; see, e.g., United States v. Williams, 504 U.S. 36, 51 (1992) citing United States v. Calandra, 414 U.S. 338 (1974)(function of grand jury is to determine whether there is probable cause to believe that one or more persons has committed proposed crime).

PRADO's arguments concerning the government's deliberate attempts to "frighten and intimidate [the] trial jury" are entirely baseless. Prado Memorandum at 5. It is the defendants' actions in engaging in violent crimes, including witness tampering and witness retaliation, in furtherance of the MS-13 racketeering enterprise that has dictated both the nature of the evidence that will be presented to a jury, which form the bases for the government's

10

concern for further obstruction of the judicial process. PRADO further claims that there is no strong reason to seek to safeguard the trial jury in this case as "there is apparently no evidence that the Defendants were ever violent to anyone who was not either a member of MS-13 or of a rival gang." Prado Memorandum at FN5, p. 5. This is simply not true as many of the victims of the defendants in the instant indictment were not gang members.[2] For example, the evidence at trial will establish that John Doe #6, John Doe #8, John Doe #11, Jane Doe #1 and Jane Doe #2 were not members of any street gang.

PRADO's remaining argument that an anonymous jury would hinder the defense's ability to make informed choices during jury selection is wholly without merit. The defendant seeks to learn the "names, addresses, and places of employment of each prospective venireperson in order to properly assist the Court in conducting a searching and probing voir dire." Id. at 11. Prado further claims in his memorandum that "a self-employed person may have different attitudes from a person who works for a large corporation." Id. However, the government's anonymous jury proposal would not prevent the defendants from making such an inquiry. For instance, inquiry

---

[2] Nowhere is this point more obvious than in the execution-style murders of 17-year-old Vanessa Argueta and her 2-year-old son, Diego Torres, neither of whom were members of any gang, by MS-13 members Adalberto Ariel Guzman and Rene Mendez Mejia, who are in trial Group IV. Third Superseding Indictment Counts 44-51.

of the proposed jurors could still be made regarding the type of work they do, the nature of their employment, the size of their company and the name of the town or city in which they live.

Apparently, counsel seeks the names of the proposed jurors and the names and addresses of their employees for the apparent purpose of conducting internet research into their backgrounds. Prado Memorandum at 22-23. The Constitution does not guarantee criminal defendants the right to perform such extrajudicial research into jurors' backgrounds. In fact, PRADO's stated intention would invade jurors' privacy and circumvent this Court's own extensive inquiry into the background and qualifications of the jury panel by conducting unknown research outside the presence of the Court and beyond that which the Court deems acceptable as part of its in-court *voir dire* of jurors. Conducting private investigations regarding jurors would be troubling in any context, but is even more worrisome in a case where more than two dozen members of the MS-13 stand charged with multiple acts of extreme violence, including offenses designed to subvert the justice process.

For these same reasons, PRADO's request that, should the Court grant the government's motion for an anonymous jury, the Court should enter a protective order, permitting counsel to obtain the prospective jurors' names, addresses, and places of employment, should be denied. See Prado Memorandum at 23. The government

12

respectfully requests that the Court reject this portion of PRADO's motion as entirely unnecessary. Moreover, even if there was a proper purpose, PRADO's suggested use of a protective order to allow disclosure of the personal information is unwieldy and impracticable. If such an order was to be utilized, so many individuals would be included on the order that any assurance that the protected biographical information would not fall into the wrong hands, even accidentally, would be, at best, illusory.

In his objection to the use of an anonymous jury, ALVARADO's counsel simply misunderstands the facts of this case when he argues that no one has attempted to tamper or retaliate with any of the witnesses against ALVARADO. Alvarado Opposition at 5-6. As set forth above, John Does #6, #7 and #8, who are expected to be witnesses against ALVARADO, were the victims of the witness tampering and retaliation offenses committed by ORTIZ, SABALLOS and ERAZO. As set forth above, there is clearly a pattern of witness tampering and witness retaliation in this particular case. Further, ALVARADO asserts that there has been "no presentation... of a 'horrific pattern of violence' by Alvarado, or any individual acting on his behalf." Id. at 4. Quite to the contrary, there has been a showing of both a horrific pattern of violence and a willingness to subvert the judicial process by members and associates of the MS-13 in general, and in this case in particular. The Third Superseding Indictment is a blueprint for that horrific

13

pattern of violence that has affected Long Island over the past several years, not a "shot-gun [sic] indictment" as alleged by PRADO.  See Prado Memorandum at 6.  Finally, despite counsel's efforts to minimize ALVARADO's culpability, the evidence at trial will prove that ALVARADO committed a horrific crime of violence when he beat John Doe #6 with a baseball bat, when the victim was already beaten and laying on the ground.

Ironically, the cases cited by ALVARADO actually support the government's application for an anonymous jury as the MS-13 has exhibited the same degree of, if not greater, violence and interference with the judicial process as the criminal enterprises involved in those cases.  See Alvarado Memorandum at 2; United States v. Young, 2010 WL 2720639 (2d Cir 2010) and United States v. Vario, 943 F.2d 236 (2d Cir. 1991).  For example, in United States v. Aulicino, "there was testimony that four of the named defendants offered bribes and threats to kill witnesses, and evidence that the father of one defendant would interfere with the process."  44 F.3d 1102, 1116 (2d Cir. 1995).  It is respectfully asserted that the facts cited in Aulicino, which gave rise to the necessity for an anonymous jury in that case, are comparable to the facts in the instant case.  Thus, for those same reasons, an anonymous jury is warranted here.

## POINT II

## PRADO'S OPPOSITION TO PARTIAL SEQUESTRATION OF JURY IS UNAVAILING

In deciding whether to grant the government's motion for a partially sequestered and anonymous jury, the Court must balance the defendant's interest in conducting meaningful *voir dire* and in maintaining the presumption of innocence against a jury member's interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict. United States v. Amuso, 21 F.3d 1251 (2d Cir. 1994). It is well-settled that when, as in this case, a serious threat to juror safety is reasonably found, precautionary measures must be taken. Id.

Here, the precautionary measures requested by the government are minimal, allowing the jurors to park in a secure parking area and entering the courthouse through an employee entrance. Similar procedures are done in the ordinary course in many other jurisdictions without creating undue fear or improper influence on jurors. Thus, notwithstanding PRADO's assertions, partial sequestration of the jury in this case can be accomplished without implicating the defendants' rights to a fair trial. Certainly, the Court can explain the procedure of having the jurors park in a particular location and enter through a particular entrance in the courthouse without evoking from the jurors a negative impression of the defendants. See, e.g., United States v.

15

<u>Tutino</u>, 883 F.2d 1125 (2d Cir. 1989) (Given articulated need for anonymous and sequestered jury, trial court's neutral instructions regarding anonymity and sequestration deemed sufficient).

POINT III

PRADO'S MOTION FOR CHANGE OF VENUE IS BASELESS AND MUST BE DENIED

Although it is somewhat difficult to determine from PRADO's motion, it appears that counsel seeks to move the trial venue of the case, not only out of the Central Islip courthouse, but out of the Eastern District of New York as well. PRADO begins his argument for change of venue by stating that "Long Island has become a hotbed of anti-Hispanic and anti-Latino rhetoric, political pandering and hate-based crime." Prado Memorandum at 13. However, counsel later asserts that "the Defendants cannot receive a fair trial in the Eastern District of New York and that the Defendants' trial should be moved to another district in an effort to avoid jurors imposing vigilante justice." Id. at 21. PRADO does not state which districts he believes would be appropriate. However, whether PRADO is claiming that he cannot receive a fair trial in Central Islip, or the Eastern District of New York as a whole, either assertion is entirely baseless and should be summarily dismissed by the Court.

Preliminarily, as this Court is aware, the jury venire in this case will be drawn from voter registration lists and Department of Motor Vehicle Records from five counties comprising the Eastern District, as set forth in Section Four of the District's Jury Selection Plan. Thus, there will be jurors from all over the Eastern District in the venire, not just Suffolk

17

County, and not just Patchogue, as discussed below. Since it is uncontroverted that the jury selection plan in the Eastern District of New York is itself representative, it is then up to the Court to conduct a meaningful and comprehensive *voir dire* in which potential jurors deemed to be unsuitable can be struck by the parties, either peremptorily or for cause.

Further, Rule 18 of the Federal Rules of Criminal Procedure provides that a prosecution shall occur in the "district where the offense was committed" and that "[t]he court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." In this case, all of the relevant offenses occurred on Long Island, the Group I Defendants are all from Long Island,[3] counsel for three of the five Group I Defendants are from Long Island, the victims all live and work on Long Island, and a vast majority of the witnesses live and work on Long Island. Thus, the "prompt administration of justice" requires that the trial take place in the Central Islip federal courthouse.

Moreover, Rule 21(a) of the Federal Rules of Criminal Procedure permits a district court to transfer a defendant's case to another district only "if the court is satisfied that so great

---

[3]   The only exception to this statement is RAMOS, who had a residence in Queens. However, RAMOS was affiliated with the Hempstead Locos Salvatruchas, the Hempstead, New York clique of the MS-13.

18

a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Here, PRADO has failed to demonstrate any actual prejudice against him, or that he could not receive a fair trial in the Central Islip courthouse.

Rather, PRADO attempts to transfer to an unknown jurisdiction based on repugnant, conclusory allegations drawn from secondary sources. Specifically, a majority of PRADO's argument for a change of venue is predicated on anecdotal information about hate-based crimes committed in Patchogue, New York.[4] Prado Memorandum at 13-22. However, PRADO fails to acknowledge that several of those crimes, which were able to be verified by competent evidence, were prosecuted and, in several cases, Suffolk County jurors returned convictions repudiating the abhorrent conduct.

---

[4] Among the anecdotal evidence that PRADO cites, he mentions the death of an immigrant, Marcelo Lucero, and the serious assaults of two immigrant day laborers in September of 2000. Id. at 20. What Prado fails to mention is that Jeffrey Conroy, the individual who fatally stabbed Lucero, was convicted by a Suffolk County jury of, among other things, Manslaughter and Gang Assault, both in the First Degree, and is currently appealing the imposition of his 25 year sentence. Defendants Christopher Slavin and Ryan Wagner were both convicted by separate Suffolk County juries in the assaults of the day laborers. Slavin received a sentence of 25 years to life for his commission of that crime. People v. Slavin, 775 N.Y.S.2d 2010 (2004). Wagner received a sentence of 25 years. People v. Wagner, 811 N.Y.S.2d 125 (2006).

19

Still further, PRADO fails to allege that the Hispanic population is under-represented in either the Brooklyn or Central Islip courthouses in the Eastern District of New York. Nor does he allege that the Court's procedure for summoning jurors will deny him the opportunity to have a jury drawn from a fair cross-section of the community. In fact, PRADO does not assert that there are too few Hispanic residents in Nassau and Suffolk Counties for PRADO to receive a fair trial, but rather, and somewhat paradoxically, that Long Island has received an influx of too many Hispanic residents to afford PRADO a fair trial. In so doing, PRADO paints all potential jurors with too broad a brush, fails to incorporate the purpose of a comprehensive jury *voir dire* by the Court into his flawed calculus, and has chosen to engage in the same type of animus and intolerance that he derides in his motion.

For all of these reasons, PRADO's motion for a change of venue should be denied.

20

CONCLUSION

For the reasons set forth above, as well as those in its original memorandum of law, the government respectfully requests that its motion for an anonymous jury be granted. The government further respectfully requests that, during the trial and deliberations, the selected jurors be directed to park in the employee parking lot behind the courthouse and to enter and exit the building through the back entrance of the building. Finally, PRADO's request for a change of venue should be denied.

Dated:    Central Islip, New York
          May 23, 2011

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney

                    By:    _Raymond A. Tierney_
                           Raymond A. Tierney
                           John J. Durham
                           Assistant U.S. Attorneys
                           (631) 715-7849/7851

cc:  All Counsel of Record (By ECF)
     Clerk of the Court (By ECF)