UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X

UNITED STATES OF AMERICA,

               - against -                          10 Cr. 074 (S-4) (JFB)

LOUIS RUIZ,

                        Defendant.

--------------------------------------------------X

**SUPPLEMENTAL MEMORANDUM OF LAW
OF DEFENDANTS LOUIS RUIZ (TRIAL GROUP V)
AND HERIBERTO MARTINEZ (TRIAL GROUP III)
IN SUPPORT OF THE USE OF
WRITTEN JUROR QUESTIONNAIRES**

STEVE ZISSOU, ESQ.          MICHAEL K. BACHRACH, ESQ.
42-40 Bell Blvd., Suite 302    276 Fifth Avenue, Suite 501
Bayside, New York 11361     New York, New York 10001
(718) 279-4500             (212) 929-0592

*Attorneys for Defendant Louis Ruiz*

ELIZABETH E. MACEDONIO, ESQ.
42-40 Bell Blvd., Suite 302
Bayside, New York 11361
(718) 279-3770
*Attorney for Defendant Heriberto Martinez*

## **Table of Contents**

Table of Authorities ................................................................................ ii

I.     Preliminary Statement .................................................................1

II.    Introduction.................................................................................3

III.   The Second Circuit Approves of the Use of Juror Questionnaires ................4

IV.    The Inherent Limitations of Oral Voir Dire ...................................6

V.     The Absence of a Written Juror Questionnaire
       Impairs Counsel's Ability to Conduct a Meaningful
       and Effective Voir Dire of an Anonymous Jury............................10

VI.    Conclusion ................................................................................15

# Table of Authorities

CASES

Irvin v. Dowd,
366 U.S. 717 (1961) ...............................................................................4

Miller-El v. Dretke,
545 U.S. 231 (2005) ...............................................................................8

Morgan v. Illinois,
504 U.S. 719 (1992) ...............................................................................4

Oeurcia v. United States,
289 U.S. 466 (1933) ...............................................................................9

Rosales-Lopez v. United States,
451 U.S. 182 (1981) ...........................................................................5, 14

Smith v. Phillips,
455 U.S. 209 (1982) ...............................................................................4

Starr v. United States,
150 U.S. 614 (1894) ...............................................................................9

Wainwright v. Witt,
469 U.S. 412 (1985) ...............................................................................4

United States v. Basciano,
Docket No. 05 Cr. 060 (EDNY 2011) (Garaufis, J.) .....................................11

United States v. Bin Laden, et al.,
Docket No. 98 Cr. 1023 (SDNY 2001) (Sand, J.) .......................................10

United States v. Burr,
25 F.Cas. 49 (Cir. Ct., D.Va. 1807) .............................................................7

United States v. Contreras,
108 F.3d 1255 (10th Cir. 1997) ..................................................................6

United States v. Deric,
Docket No. 97 Cr. 269 (SDNY 2007) (Cote, J.) ............................................11

United States v. Ghailani,
Docket No. 98 Cr. 1023 (SDNY 2010) (Kaplan, J.) ....................................10

United States v. Gioeli,
Docket No. 08 Cr. 240 (EDNY 2012) (Cogan, J.) ........................................11

United States v. James and Mallay,
Docket No. 02 Cr. 778 (EDNY 2007) (Johnson, J.) .....................................10

United States v. Kyles,
40 F.3d 519 (2d Cir. 1994) ...........................................................................14

United States v. Lawes,
292 F.3d 123 (2d Cir. 2002) .............................................................................5

United States v. McGriff,
Docket No. 04 Cr. 966 (EDNY 2006) (Block, J) ..........................................10

United States v. McVeigh,
153 F.3d 1166 (10th Cir. 1998) ........................................................................6

United States v. McVeigh,
918 F.Supp. 1467 (W.D. Okla. 1996).................................................................7

United States v. Millar,
79 F.3d 338 (2d Cir. 1996) .............................................................................14

United States v. Paradies,
98 F.3d 1266 (11th Cir. 1996) ..........................................................................6

United States v. Persico,
Docket No. 10 Cr. 147 (EDNY 2012) (Townes, J.) ......................................11

United States v. Pitera,
Docket No. 90 Cr. 424 (EDNY 1994) (Raggi, J.) .........................................11

United States v. Quinones,
511 F.3d 289, 299 (2d Cir. 2007) ...................................................4, 5, 6

United States v. Rahman,
189 F.3d 88 (2d Cir. 1999) .................................................................5, 6

United States v. Stewart,
433 F.3d 273 (2d Cir. 2006) ...............................................................5, 6

United States v. Thai,
29 F.3d 785 (2d Cir. 1994) ............................................................5, 6, 10

United States v. Thomas,
757 F.2d 1359 (2d Cir. 1985) ................................................................3

United States v. Treacy,
639 F.3d 32 (2d Cir. 2011) ....................................................................5

United States v. Vario,
943 F.2d 236 (2d Cir. 1991) .................................................................10

United States v. Wilson,
Docket No. 04 Cr. 1016 (EDNY 2007) (Garaufis, J.)...................................11

STATUTES AND OTHER AUTHORITIES

Fed.R.Crim.P. 24 .............................................................................13

Broeder, Voir Dire Examinations:  An Empirical Study,
38 S.Cal. L. Rev. 503, 506, 513 (1965)........................................................8

Note, Judges' Non-Verbal Behavior in Jury Trials:
A Threat to Judicial Impartiality,
61 Va. L. Rev. 1266 (1975) ....................................................................8

## I.    **Preliminary Statement**

On November 5, 2012, the Government moved for an anonymous and partially sequestered jury with respect to the trial of "Trial Group III" (i.e., defendants Heriberto Martinez, Vidal Espinal, and Carlos Ortega[1]), arguing that such was necessary due to: "(a) the serious nature of the crimes charged, multiple murders; (b) the defendants' membership in the MS-13 street gang; (c) the fact that repeated efforts have already been made to obstruct justice in this case by the defendants' fellow MS-13 gang members and associates; (d) the fact that countless MS-13 members remain at liberty on Long Island and elsewhere; and (e) this case has already received coverage in the media" (Government's Motion for Joinder of Trial and for an Anonymous and Partially Sequestered Jury, dated, November 5, 2012 [ecf # 1055], at 3).

Counsel for defendants Heriberto Martinez and Vidal Espinal opposed.  See Letter-brief of Elizabeth E. Macedonio (Counsel for Defendant Martinez), dated, December 4, 2012 (ecf # 1084); Letter of John F. Carman (Counsel for Defendant Espinal, dated, December 17, 2012 (ecf # 1099).

On December 19, 2012, this Court granted the Government's motion with respect to the jury selection of Trial Group III.  This Court also noted that it is inclined to deny the Trial Group III defendants' request for the use of a jury questionnaire, but

---

[1]    Defendant Ortega was indicted separately under Indictment No. 12 Cr. 293 (JFB) (EDNY), however this Court granted the Government's motion for joinder on December 19, 2012, thereby consolidating his trial with that of defendants Martinez and Espinal.

1

invited the parties to explain why oral <u>voir dire</u>, in lieu of a written questionnaire, would not satisfy the concerns raised by defense counsel.

Thereafter, on December 28, 2012, upon the undersigned's request, this Court granted counsel for Defendant Louis Ruiz permission to file a supplemental memorandum of law to address the value of utilizing a written jury questionnaire during the jury selection to take place for Trial Group III as well as for "Trial Group V" (<u>i.e.</u>, defendants Louis Ruiz, Yonis Acosta-Yanes, David Valle, and Franklin Villatoro).

In light of this Court's rulings, and to avoid unnecessary repetition, defendants Louis Ruiz and Heriberto Martinez, by and through their attorneys, jointly submit the instant supplemental memorandum of law to address both defendants' concerns. Further, while Trial Group V is not scheduled to begin jury selection until April 22, 2013, whereas Trial Group III is scheduled to being jury selection on January 28, 2013, the instant memorandum is also being submitted to ensure that Ruiz's interests (and those of his co-defendants in Trial Group V) are fully and fairly heard prior to any further rulings being made in relation to Trial Group III that could create "law of the case" with respect to this issue.

We also note that we have conferred with counsel for all remaining defendants in Trial Group III and Trial Group V, and all such defendants join in the positions expressed herein.

## II.    __Introduction__

The right to a trial by jury is one of the oldest and most protected rights; a right that is in large part dependent upon the ability of the defendant to appropriately question the venire to ensure that a jury of his peers has been assembled.  Since it is well settled that the use of an anonymous jury substantially impairs a defendant's ability to select a fair and impartial jury, courts are faced with the need to balance the inequities of anonymous jury selection with the occasional necessities of such procedure.  See United States v. Thomas, 757 F.2d 1359, 1365 (2d Cir. 1985) (outlining the basic standard for determining when the use of an anonymous jury is constitutional: "there must be, first, strong reason to believe that the jury needs protection and, second, reasonable precaution must be taken to minimize the effect that such a decision might have on the jurors' opinions of the defendants") (emphasis added).

Indeed, the primary problem with an anonymous jury is that the requirement of anonymity itself creates bias and fears.  Undeniably, jurors are less likely to admit their fears associated with being part of an anonymous jury when being questioned directly by the Court, regardless if the questioning is done in a group or individually.  Consequently, this fundamental problem cannot be properly addressed solely through oral voir dire.  An anonymous voir dire also deprives the defendant of the ability to meaningfully assess the composition of the *entire venire* prior to making decisions on

which jurors to strike for cause or through peremptory challenges.  Oral <u>voir dire</u> does nothing to address this concern.

As such, we urge this Court to balance the inequities of anonymous jury selection with the benefits provided by the use of a detailed written juror questionnaire. For the reasons that follow, we respectfully submit that oral <u>voir dire</u> remains necessary, but when relied upon alone without a written juror questionnaire, it is an insufficient method in which to balance the prejudice created by jury anonymity.

**III.    The Second Circuit Approves of the Use of Juror Questionnaires**

It is long established that a defendant has a due process right to an impartial jury.  <u>See</u> <u>Irvin v. Dowd</u>, 366 U.S. 717, 721-22 (1961).  The Supreme Court has consistently held that an impartial jury consists of "jurors who will conscientiously apply the law and find the facts[,]" <u>Wainwright v. Witt</u>, 469 U.S. 412, 423 (1985), and "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it."  <u>Smith v. Phillips</u>, 455 U.S. 209, 217 (1982).

"Although the Constitution makes no mention of <u>voir dire</u>, the law recognizes the important role this process plays in ensuring the fair and impartial criminal jury mandated by the Sixth Amendment."  <u>United States v. Quinones</u>, 511 F.3d 289, 299 (2d Cir. 2007), <u>citing</u>, <u>Morgan v. Illinois</u>, 504 U.S. 719, 729 (1992) (observing that "part of the guarantee of a defendant's right to an impartial jury is an adequate <u>voir dire</u> to identify unqualified jurors").  "<u>Voir dire</u> helps the trial court and the parties

identify those persons who, for various reasons, cannot evaluate the evidence impartially or follow the court's legal instructions."  Quinones, 511 F.3d at 299, citing, Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981); United States v. Stewart, 433 F.3d 273, 303 (2d Cir. 2006).

We acknowledge that "judges have been accorded ample discretion in determining how best to conduct the voir dire," Rosales-Lopez, 451 U.S. at 189, and the Second Circuit does not appear to have ever "reversed a conviction for the failure to ask a particular question on the voir dire of prospective jurors," United States v. Treacy, 639 F.3d 32, 46 (2d Cir. 2011), quoting, United States v. Lawes, 292 F.3d 123, 129 (2d Cir. 2002).  However, the Second Circuit has "approved the use of questionnaires as one of the many tools available for voir dire."  Treacy, 639 F.3d at 46 (emphasis added); see also Quinones, 511 F.3d at 299-300.

Indeed, Federal courts "routinely employ questionnaires to facilitate voir dire in a number of circumstances," and the Second Circuit has routinely approved their use. Quinones, 511 F.3d at 299, citing, e.g., United States v. Rahman, 189 F.3d 88, 121 (2d Cir. 1999) (approving use of comprehensive questionnaire where a large number of prospective jurors must be screened); United States v. Thai, 29 F.3d 785, 801 (2d Cir. 1994) (approving use of comprehensive questionnaire where an anonymous jury is to be empanelled); Stewart, 433 F.3d at 303 (approving use of comprehensive questionnaire where there has been extensive pre-trial publicity); see also Quinones,

511 F.3d at 299-300 (approving of the use of a jury questionnaire where the death penalty may be imposed); United States v. McVeigh, 153 F.3d 1166, 1181 (10th Cir. 1998) (same).

Notably, the factors that separately led to a juror questionnaire being utilized in Rahman (large number of prospective jurors), Thai (an anonymous jury), and Stewart (pre-trial publicity), are all present here.

Moreover, the use of a written juror questionnaire "as a preliminary screening tool falls well within the district court's broad discretion in conducting voir dire." Quinones, 511 F.3d at 300, citing, Rahman, 189 F.3d at 121-22 (holding, where district court removed some potential jurors for cause based on responses to questionnaires while conducting oral voir dire of remaining venire, the court's "voir dire skillfully balanced the difficult task of questioning such a large jury pool with the defendants' right to inquire into the sensitive issues that might arise in the case"); see also United States v. Contreras, 108 F.3d 1255, 1269-70 (10th Cir. 1997) (endorsing removal of prospective jurors for cause in non-capital cases based on questionnaire responses); United States v. Paradies, 98 F.3d 1266, 1277-81 (11th Cir. 1996) (same).

## IV.    The Inherent Limitations of Oral Voir Dire

A thorough voir dire is often assumed to be the best remedy for bias, if not the best assessment of the nature and extent of prejudice, which may exist in the venire. However, there are inherent limitations to what oral voir dire can achieve as an

effective mechanism for rooting out bias, particularly without the insolating protection afforded by a complementary written questionnaire.   As Chief Justice Marshall observed two centuries ago, protestations of neutrality by a juror are not to be trusted:

> He may declare that notwithstanding these prejudices he is determined to listen to the evidence, and be governed by it; but the law will not trust him . . . He will listen with more favor to that testimony which confirms, than that which would change his opinion.

United States v. Burr, 25 F.Cas. 49, 50 (Cir. Ct., D.Va. 1807).

In a case such as this there are a number of factors that support a presumption that potential jurors are biased.   Indeed, each of the factors relied upon by the Government in support of its motion for an anonymous jury applies equally to the need for a juror questionnaire.   See Government's Motion for Joinder of Trial and for an Anonymous and Partially Sequestered Jury, dated, November 5, 2012 (*ecf # 1055*), at 3 (listing the serious nature of the crimes charged, the defendants' membership in MS-13, repeated efforts by MS-13 to obstruct justice in this case, countless co-conspirators remain at liberty, and extensive media coverage).   Uncovering such biases (or the fears that create such biases) is made all the more difficult with an anonymous venire where jurors will be even more likely to be less forthright in their responses.

The existence of prejudice is not easy to prove, in part because "it may go unrecognized in those who are affected by it."   United States v. McVeigh, 918 F.Supp.

1467, 1472 (W.D. Okla. 1996). Likewise, Justice Stephen Breyer has noted, " 'Subtle forms of bias are automatic, unconscious and unintentional' and 'escape notice, even the notice of those enacting the bias.' " Miller-El v. Dretke, 545 U.S. 231, 286 (2005) (Breyer, J., concurring).

Some prospective jurors who hold biases are likely to state that they can be impartial solely because their answer is consistent with socially learned values that people should be impartial, a phenomenon that psychologists call "acquiescence" or "socially desirable" responses. The tendency to provide such answers can be enhanced by the authoritarian presence of the judge and is heightened when the voir dire examination is conducted by the Court. Jurors perceive the authority of the Court and implicit message that to be "good" citizens they must say they can set aside their biases and prejudices – without knowing whether they are truly capable of doing so – and follow the law. Unfortunately, such blanket assertions are often naive and hollow. Indeed, social science studies have repeatedly shown that jurors are acutely aware of even the most subtle cues or indications from the judge. Fearing the court's disapproval, jurors will usually respond to the court's queries in a manner they believe is acceptable to the court without actually considering their own individual, personal and honest responses. See Note, Judges' Non-Verbal Behavior in Jury Trials: A Threat to Judicial Impartiality, 61 Va.L.Rev. 1266 (1975); Broeder, Voir Dire Examinations: An Empirical Study, 38 S.Cal.L.Rev. 503, 506, 513 (1965).

The Supreme Court long ago explained:

> The influence of the trial judge on the jury "is necessarily and properly of great weight" and "his lightest word or intimation is received with deference, and may prove controlling."

Oeurcia v. United States, 289 U.S. 466, 470 (1933), quoting, Starr v. United States, 150 U.S. 614, 626 (1894).  While such judicial control is necessary once a qualified jury has been selected, it should not be permitted – however unintentionally – to influence the selection process itself.  A written questionnaire helps the Court and the parties avoid such unintended influence by allowing the jurors to first answer preapproved questions presented to them in a manner shielded by complete privacy and necessarily free of any potential for unintended influence or intimation.

Additionally, on a practical level, written questionnaires allow jurors more time, however slight, to reflect upon their beliefs before providing an answer to the question presented.  There is the old, but very true, cliché that people often speak before they think; such is avoided when jurors are permitted the time for reflection before composing their written answers.  Further, a written questionnaire allows jurors to openly confess their fears and biases in a manner that avoids the potential embarrassment of confessing to either out loud and in public.

Finally, it is also worth noting that while the use of a written juror questionnaire may appear on its face to be a process that could lengthen the time required to select a

9

jury, in practice when a large jury pool is involved, such as here, quite the opposite occurs.  Say, for example, 400 potential jurors are required for the selection of this case.  The time it would take to individually question all 400 jurors regarding potential bias could take weeks.  On the other hand, if the jurors all simultaneously complete a juror questionnaire, such process would likely take no more than an hour or so, followed by a few days for the parties to the review the questionnaires <u>and confer and agree to consent strikes</u>, thus significantly culling all jurors that the parties can mutually agree should be struck for cause <u>even prior to the commencement of oral voir dire</u>.  This leads to a jury selection that ends up being significantly faster and more efficient than oral <u>voir dire</u> of a large jury pool conducted without a questionnaire.

## V.  The Absence of a Written Juror Questionnaire Impairs Counsel's Ability to Conduct a Meaningful and Effective Voir Dire of an Anonymous Jury

The empanelling of an anonymous jury is an unusual and drastic measure that is justified only when the Government establishes that it is "genuinely called for." <u>United States v. Vario</u>, 943 F.2d 236, 239 (2d Cir. 1991); <u>United States v. Thai</u>, <u>supra</u>, 29 F.3d 785, 801 (2d Cir. 1994).  Courts in the Second Circuit overwhelmingly choose to correct this implicit imbalance in the selection process by approving the use of a detailed jury questionnaire.  <u>See, e.g.</u>, <u>United States v. Bin Laden, et al.</u>, Docket No. 98 Cr. 1023 (SDNY 2001) (Sand, J.); <u>United States v. Ghailani</u>, Docket No. 98 Cr.

1023 (SDNY 2010) (Kaplan, J.); <u>United States v. James and Mallay</u>, Docket No. 02 Cr. 778 (EDNY 2007) (Johnson, J.); <u>United States v. McGriff</u>, Docket No. 04 Cr. 966 (EDNY 2006) (Block, J); <u>United States v. Persico</u>, Docket No. 10 Cr. 147 (EDNY 2012) (Townes, J.) <u>United States v. Gioeli</u>, Docket No. 08 Cr. 240 (EDNY 2012) (Cogan, J.); <u>United States v. Pitera</u>, Docket No. 90 Cr. 424 (EDNY 1994) (Raggi, J.); <u>United States v. Deric</u>, Docket No. 97 Cr. 269 (SDNY 2007) (Cote, J.); <u>United States v. Wilson</u>, Docket No. 04 Cr. 1016 (EDNY 2007) (Garaufis, J.); <u>United States v. Basciano</u>, Docket No. 05 Cr. 060 (EDNY 2011) (Garaufis, J.).

Beyond the advantages to combating juror bias discussed above, there are numerous additional ways in which a detailed questionnaire enhances counsel's ability to conduct meaningful <u>voir dire</u>; perhaps the most significant of which is that it gives counsel a "snap shot" of the entire venire. This macro view of the entire array provides counsel with a threshold understanding of the kinds of people that populate the venire and, in doing so, allows counsel to develop a focused selection strategy that can be tailored to reality, thus removing the guesswork that is the hallmark of an anonymous panel.

When an anonymous jury is selected, oral <u>voir dire</u> alone is simply not a legitimate substitute for the use of a detailed questionnaire. Instead, oral <u>voir dire</u> is at best a *supplement* in the process that commences with the written questionnaire, to be used to enhance counsel's ability to conduct meaningful <u>voir dire</u>, not to make it more

difficult to do so.  To use just a few examples of how the absence of a questionnaire impairs the ability to conduct meaningful <u>voir dire</u>, suppose, in a given case, that counsel had made the strategic decision that a more educated jury would be appropriate.  A questionnaire allows counsel to make an initial determination about whether this strategy might work by analyzing the questionnaires to see if there is a sufficient quantity of educated people in the array.  This in turn allows counsel to fashion <u>voir dire</u> requests during the selection process that help effectuate this strategy.  During individual questioning, in the absence of a written questionnaire, counsel will simply have no way of knowing if this is a fool's errand or not, until, of course, it is too late.

Nor is this the only way that the absence of a questionnaire hampers counsel's ability to select a fair and impartial jury from an anonymous venire.  At the most fundamental level, jury selection involves the search for people who are as close to peers of a particular defendant as is humanly possible.  People who, in theory, might be most sympathetic to him.  If a particular defendant is a senior citizen, counsel may choose to adopt a strategy of selecting as many senior citizens as possible.  If a youthful client, perhaps a younger jury, a female defendant, perhaps female jurors (or male, in the right case).  With an anonymous array, armed with nothing but a list of numbers on a sheet of paper, counsel simply does not have the tools necessary to develop a cogent strategy.  And, without these tools, defense counsel will be unable to

12

maintain the kind of strategic flexibility that jury selection demands.  In short, defense counsel will be unable to conduct meaningful voir dire.

It also should not be ignored that jurors do not approach a trial as empty receptacles who passively listen to the evidence and decide cases independent of their past experience, knowledge, and awareness of community norms.  They do not simply store and record evidence.  Rather, they actively select and organize it around pre-existing beliefs to construct an understanding of the events in dispute.  As an unavoidable impulse, jurors fill in gaps in the evidence with inferences about how the world works.  These processes include assumptions about important past events, inferences about human character, and the motivations of the parties involved.

Here, the topics which must be explored in order to insure an impartial jury in this case are very sensitive.  Potential jurors will only be qualified to sit on the jury if they can remain impartial even in the face of the brutality of the alleged conduct; conduct that involves multiple murders and extensive gang activity.  Indeed, the charges alleged against Trial Group III include the brutal murder of a mother and her two-year-old child, and the charges alleged against Trial Group V include the senseless murder of a 16-year-old boy with absolutely no connection to gangs or criminal conduct, whose only sin was playing handball on MS-13 turf.  As discussed above, a questionnaire would allow the Court to make inquiry in a less confrontational manner, thus encouraging more candid responses to sensitive questions.

Finally, it is worth noting that the Federal Rules allow for questioning by either the Court or the parties or a combination of both, <u>see</u> Fed.R.Crim.P. 24(a), and it is well settled that District Courts have "ample discretion in determining how best to conduct the voir dire." <u>Rosales-Lopez v. United States</u>, <u>supra</u>, 451 U.S. 182, 189 (1981); <u>see also</u> <u>United States v. Millar</u>, 79 F.3d 338, 342 (2d Cir. 1996). As such, this Court has "broad discretion whether to pose a defendant's requested voir dire questions," <u>United States v. Kyles</u>, 40 F.3d 519, 524 (2d Cir. 1994), including, specifically, those suggested in a proposed juror questionnaire.

Here, we respectfully submit that a jury questionnaire is appropriate and necessary to adequately question jurors regarding bias and to encourage candid responses, allowing both sides to exercise their cause and peremptory challenges intelligently.

## VI.   <u>Conclusion</u>

Wherefore, for the above-stated reasons, defendants Louis Ruiz and Heriberto Martinez, by and through their attorneys, respectfully submit that a written juror questionnaire should be utilized in the trials of both Trial Group III and Trial Group V.

Finally, we once again note that we have spoken to counsel for all of the other remaining defendants charged in Trial Group III and Trial Group V, and all such defendants join in the positions expressed herein.

Dated:  New York, New York
         January 5, 2013

                              Respectfully submitted,

                              Michael K. Bachrach
                              Steve Zissou
                              *Attorneys for Defendant Louis Ruiz*

                              Elizabeth E. Macedonio
                              *Attorney for Defendant Heriberto Martinez*