JJD:CNC
F.#2010R00014

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                Cr. No. <u>10-CR-074 (S-4)(JFB)</u>

HERIBERTO MARTINEZ,
    also known as "Boxer," and
LOUIS RUIZ,
    also known as "Chucky,"

            Defendants.

- - - - - - - - - - - - - - - - - X


THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION
TO HERIBERTO MARTINEZ (GROUP III) AND LOUIS RUIZ'S (GROUP V)
<u>MOTION TO USE WRITTEN JUROR QUESTIONNAIRES</u>


                                    LORETTA E. LYNCH
                                    United States Attorney
                                    Eastern District of New York
                                    610 Federal Plaza
                                    Central Islip, NY 11722


John J. Durham
Carrie N. Capwell
Raymond A. Tierney
Assistant U.S. Attorneys
    (Of Counsel)

<u>PRELIMINARY STATEMENT</u>

The government respectfully submits this Memorandum of Law in Opposition to the Supplemental Memorandum of Law filed by Trial Group III defendant HERIBERTO MARTINEZ, also known as "Boxer," and Trial Group V defendant LOUIS RUIZ, also known as "Chucky," on January 5, 2013, in support of the use of written questionnaires during jury selection. On December 19, 2012, the Court granted the government's motion for an anonymous and partially sequestered jury. The Court stated that it was not inclined to use a juror questionnaire, but permitted defense counsel additional time to brief the issue further. On December 28, 2012, the Court granted RUIZ's request for permission to file an additional memorandum in support of the use of a juror questionnaire. (Docket Entry No. 1117).

For the reasons set forth below, the Court should deny MARTINEZ and RUIZ's request to use written juror questionnaires.

POINT ONE

THE USE OF A JUROR QUESTIONNAIRE
IN THIS CASE IS UNNECESSARY

It is well-settled that the questioning of potential
jurors on <u>voir</u> <u>dire</u> is "quintessentially" a matter for the
discretion of the district court. <u>United States v. Lawes</u>, 292 F.3d
123, 128 (2d Cir. 2002); <u>see also</u> <u>Rosales-Lopez v. United States</u>,
451 U.S. 182 (1981) (holding that district courts have "ample
discretion in determining how best to conduct the <u>voir</u> <u>dire</u>");
<u>United States v. Treacy</u>, 639 F.3d 32, 47 (2d Cir. 2011) (holding
that the district judge's personal policy against using a
questionnaire is "well within his bailwick as a trial judge so long
as he conducts adequate <u>voir</u> <u>dire</u> by some other means").  It is
also well-settled that the use of a written questionnaire, even
where an anonymous jury is empaneled, is not mandatory.  <u>See</u>
<u>Treacy</u>, 639 F.3d at 46; <u>United States v. Quinones</u>, 511 F.3d 289,
300 n.8 (2d Cir. 2007) ("In approving the use of questionnaires as
part of <u>voir</u> <u>dire</u>, we do not hold that district judges are <u>ever</u>
obligated to make use of this procedure in selecting
juries.")(emphasis added).

In the instant case, the Court can conduct "thorough and
probing" <u>voir</u> <u>dire</u> without the use of a written questionnaire.
<u>United States v. Salameh</u>, 152 F.3d 88, 120-21 (2d Cir. 1998)
(holding that district court did not abuse its discretion in
declining to use defense questionnaire).  An appellate court will

3

not interfere with the manner in which voir dire has been conducted absent a clear abuse of discretion.  Id.  Restrictions on voir dire will be upheld "unless a defendant has been precluded from obtaining an impartial jury."  United States v. Barnes, 604 F.2d 121, 138 (2d Cir. 1979).  The Second Circuit has noted that it has apparently never reversed a conviction because of the trial court's refusal to ask a particular question in voir dire.  See Treacy, 639 F.3d at 47.

Furthermore, even in cases where questionnaires were used, the Second Circuit has strongly recommended that the court conduct some oral voir dire before granting challenges for cause, unless irrevocable bias is so evident from the juror's responses on the questionnaire "as to render superfluous further oral inquiry about the juror's ability to follow legal instructions and to serve impartially."  See Quinones, 511 F.3d at 302.

As a matter of policy, the Honorable Jed S. Rakoff, United States District Court Judge for the Southern District of New York, refuses to give jurors written questionnaires.  Treacy, 639 F.3d at 36.  As Judge Rakoff explained:

> The[re are] many problems with questionnaires, but the single biggest problem [ ] is that there is no one in the world who can draft a question that will not have ambiguities that will be, as I learned the one time [I] tried it, that will be picked up on by various prospective jurors.  And thus during the voir dire, a huge amount of time will be spent explaining to a juror why he or she misunderstood the question in the questionnaire or finding out that . . . the way he interpreted it was not the way the lawyers interpreted it.

4

*Id*. (quoting Tr. of Jan. 30, 2009 Hearing at 12-13).  The Court of Appeals found that Judge Rakoff did not abuse his discretion in declining to use a written juror questionnaire, given that he offered a rational, non-arbitrary reason for his policy, and as long as he conducted adequate <u>voir</u> <u>dire</u> by some other means.  *Id*. at 47.

Moreover, in <u>United States v. Tomero</u>, 486 F.Supp.2d 320, 324 (S.D.N.Y. 2007), the defendants requested the use of a jury questionnaire so that they could obtain more complete information about jurors in the event an anonymous jury was empaneled.  The district judge – the Honorable Lewis A. Kaplan – granted the government's motion for an anonymous jury, but denied the defendants' request, finding that the use of a questionnaire was unnecessary.  *Id*. at 325.  The district court noted that the government's request for an anonymous jury would "not limit inquiry into the occupations of the jurors, only information about their specific places of employment."  *Id*.  Moreover, although the jurors' names and addresses would remain confidential, the court would inquire as to the county in which each potential juror resides.  *Id*.  The court concluded that the defense would have no problem in assessing the possible bias of potential jurors.  *Id*. The same holds true in the instant case.

The defendants insist oral <u>voir</u> <u>dire</u> is not sufficient and that written questionnaires are necessary for two primary

5

reasons: (1) jurors are less likely to admit their fears associated with being part of an anonymous jury when being questioned directly by the Court; and (2) the questionnaires allow defense counsel to gain a better understanding of the venire as a whole.  Supp. Mem. at 3, 7-9, 10-13.

As to the defendants' first concern, they offer no empirical and statistically reliable data that jurors are more honest when responding in writing, rather than orally in court.[1] Common sense and experience dictate that if a juror is truly frightened due to the nature of the charges and being part of an anonymous jury, he/she will make certain to inform the court of his/her fears during oral <u>voir</u> <u>dire</u> in order to be removed from the panel.  Generally speaking, potential jurors are not shy about expressing to the Court their reasons for wanting to be excused from jury service.

Defendants' second principal complaint is that the absence of written questionnaires will impair defense counsel's ability to conduct a meaningful and effective <u>voir</u> <u>dire</u> of an anonymous jury.  Supp. Mem. at 10-13.  However, the only information the parties will not be privy to concerning the potential jurors is their names (which are of little, if any, value), the town where they reside and the name of their employer.

---

[1] The law review articles cited in the defendants' Supplemental Memorandum at page 8 are not available on Westlaw or Lexis due to the year of publication (1965 and 1975).

The government does not object to the Court asking the jurors their county of residence and how each juror is employed (without mentioning employer name and work location). Thus, in terms of gaining information about the potential jurors, the fact that the jurors are "anonymous" does not affect the quality of the information that can be learned about each potential juror through thorough voir dire in any significant way. As long as the Court conducts a "thorough and probing" oral voir dire, the parties will be able to assess the possible bias of potential jurors and the defendants' rights will be protected, without the use of a questionnaire. See Tomero, 486 F.Supp.2d at 325.

On the other hand, if the defendants' request is granted, the use of written juror questionnaires will almost certainly delay the commencement of trial, as the attorneys and the Court would spend the week of January 28 having the jurors fill out the questionnaires, having the questionnaires (which are currently 43 pages long) copied and distributed, reviewing the questionnaires, discussing agreed upon challenges for cause, and, if time allows, possibly appearing before the Court to argue for dismissal of jurors for cause, to which the parties could not agree. Hence, opening statements and the government's presentation of evidence would not begin on Monday, February 4, as scheduled; instead, a significant portion of that week would be spent on oral voir dire of the prospective jurors.

For all of the reasons stated above, the Court should deny the defendants' request for a written juror questionnaire.

POINT TWO

THE GOVERNMENT'S OBJECTIONS
TO MARTINEZ'S PROPOSED JUROR QUESTIONNAIRE

To the extent that the Court is inclined to grant the defendants' request for the use of a written questionnaire, the government makes the following objections and/or requests the following modifications to the proposed questionnaire:

(1) Question 1: After "If yes, please explain", add: "If you have travel plans that prevent you from serving on the jury, specify whether you have already purchased non-refundable tickets and/or hotel accommodations. Note that you might be asked to provide documentation to the Court prior to being released from jury service."

(2) Question 5: Delete this question, which asks prospective jurors to list any prescription medications they are taking, as it is redundant of Question 4 and overly broad. If a prospective juror is taking a prescription medication due to a medical condition or emotional problem that would interfere with his/her ability to serve as a juror, the prospective juror will note that condition under Question 4.

(3) Question 8, subparts (a) - (c): Advise jurors to respond by providing only name of State and, if born outside the United States, only the country of birth.

(4) Question 10, subpart (a): Delete this question, which asks the juror: "What do you regard as your ethnic background and that of your spouse/life partner (if applicable)." This is an improper basis to strike a juror.

(5) Questions 13, 14 and 15: Delete these questions, as they ask the potential jurors to specify what community or neighborhood they reside in or have resided in within the past 10 years.

(6) Question 16, subparts (a) and (b): Add: "If yes, please explain without providing the name of the neighborhood."

(7) Question 19: Delete "area or neighborhood" and substitute with "county or counties."

(8)  <u>Question 37, subpart (b)</u>: Instead of listing the names of the "clubs or associations" the juror belongs to, which could lead to the identification of the juror, the juror should be asked to describe the purpose of the club or association in general terms (i.e., religious organization, philanthropical organization, business-related organization, etc.)

(9)  <u>Question 44</u>: Add subpart part (c): "Were you satisfied with the way in which the police handled the complaint?  If no, please explain."

(10) <u>Question 50, subparts (a) and (b)</u>: These questions are overly broad.  Subpart (a) asks the potential juror if he/she has "ever been the victim of racial, ethnic or religious prejudice or discrimination."  It is unclear how the responses to this question (i.e., "Yes, my neighbor does not like me because I am <u>[insert ethnicity or religion]</u>") are relevant to the issues in this case, especially given that the defendants and the victims are not of different racial or ethnic groups.

(11) <u>Question 51</u>: After subpart (c), add "If no, please explain."

(12) <u>Question 63</u>: Add "reasonable" before "doubt" at the end of the question.

(13) <u>Question 73</u>: Delete this question, which asks: "Would the recent murders in Newtown, Connecticut, affect your ability to be fair and impartial in a case involving gun violence?"  The question is highly inflammatory, given the very recent and horrific murders of twenty young school children in Newtown, Connecticut.  Moreover, the question lacks relevance to the facts of the instant case.  The defendants in this case did not use assault weapons to murder the five victims at issue in this case, and the instant case does not involve a mass murder.

(14) <u>Question 77</u>: As drafted, this question might cause jurors to be concerned for their safety, when they had no such concern prior to reading the question.  Instead, the question should be drafted in a more open-ended manner: "Is there anything you have learned about this case, whether in court or elsewhere, that would affect your ability to be fair and impartial?  If <u>yes</u>, please explain."

(15) <u>Question 96 and/or Summary of the Charges section</u>: Advise potential jurors that the defendants are <u>not</u> facing the death penalty.

10

In addition, several questions are redundant of each other or of little value.  Should the Court grant the defendants' request to use a written questionnaire, the government requests additional time to consult with defense counsel in an effort to make the questionnaire more concise.

<u>CONCLUSION</u>

For the reasons set forth above, the government respectfully submits that the Court should deny Trial Group III defendant MARTINEZ and Trial Group V defendant RUIZ's motion to use a written juror questionnaire.  If the Court grants the defendants' motion, the Court should direct MARTINEZ to revise the proposed juror questionnaire as requested by the government herein and should permit the government and defense counsel additional time to attempt to make the questionnaire more concise.

Dated: Central Islip, New York
       January 14, 2013

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:  <u>/s/ Carrie N. Capwell</u>
     John J. Durham
     Carrie N. Capwell
     Raymond A. Tierney
     Assistant U.S. Attorneys
     (631) 715-7851/7836/7849

cc:  Clerk of the Court (JFB) (By ECF)
     Counsel for Group III and Group V Defendants (By ECF)