1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                              :
UNITED STATES OF AMERICA

                                   CR-10-0074


            -against-          :
                                   United States Courthouse
                                   Central Islip, New York

HERBERTO MARTINEZ,

       Defendant.             :
                                   January 17, 2012
- - - - - - - - - - - - - - - X   2:15 p.m.

                TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE JOSEPH F. BIANCO
             UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:        LORETTA E. LYNCH
                           United States Attorney
                           100 Federal Plaza
                           Central Islip, New York 11722
                           BY:  JOHN DURHAM, ESQ.
                                CARRIE CAPWELL, ESQ.
                                RAYMOND TIERNEY, ESQ.
                           Assistant United States Attorney


For the Defendant:         ELIZABETH MACEDONIO, ESQ.




Court Reporter:            Mary Ann Steiger
                           100 Federal Plaza
                           Central Islip, New York 11722
                           (631) 712-6101


         Proceedings recorded by mechanical stenography.
            Transcript produced by computer.

1          THE COURT:  I think we will start with -- before

2    we get to Mr. Ortega's motion, Mr. Ortega has a motion for

3    severance and, as Ms. Macedonio noted, she also has filed

4    a motion to sever certain counts with respect to her

5    client, and you're prepared to go forward on that,

6    Ms. Macedonio?

7          MS. MACEDONIO:  Yes.

8          MS. RANTALA:  Mr. Ortega would formally join in

9    that motion filed by Ms. Macedonio.

10         THE COURT:  You did file a motion.  The trial

11   will not be severed, the count should be severed.

12         MS. RANTALA:  Yes, I would join in that and the

13   case law cited as well.

14         THE COURT:  I want to ask the government, the

15   3500 material will be turned over so they know who the

16   witnesses are?

17         MR. DURHAM:  The bulk has been, your Honor.  We

18   have another round of 3500 that will probably go out today

19   as long as it's copied and scanned.  If not today,

20   tomorrow.

21         THE COURT:  Ms. Macedonio has proffered what she

22   believes some of the details are going to be that will be

23   offered at trial with respect to the murder of the two

24   year old boy, and I want a better understanding of what

25   the government's theory of accessory after the fact is and

1    what the proof will be with respect to that.

2         MR. DURHAM:  Your Honor, with respect to

3    Mr. Martinez, he's charged in connection with the Arguetta

4    and Torres murders in a couple different ways.

5         First, he's charged with conspiracy to murder

6    Ms. Arguetta.  He's also charged with a firearms offense

7    and the subsequent murder of her under an aider and

8    abettor theory.

9         The evidence at trial will show he conspired

10   with other MS-13 members beforehand.  He agreed and

11   essentially authorized the murder of Ms. Arguetta and

12   helped the individuals who carried out that murder to

13   obtain a firearm which they used in the Arguetta and

14   Torres murder.

15        We're not introducing evidence that Mr. Martinez

16   had planned to kill Diego Torres or planned discussion of

17   that between him and the individuals who actually carried

18   out the shootings.  Therefore, we did not charge him with

19   the subsequent murder of Diego Torres or the 924 J count,

20   causing the death with a firearm in connection with

21   Mr. Torres.

22        In terms of accessory after the fact, the

23   evidence will show that after the three individuals

24   carried out the Arguetta and Torres murders, Mr. Martinez

25   assisted them in a variety ways to evade law enforcement

4

1    and escape jurisdiction, including providing them with

2    housing, providing them with money and even when they were

3    in El Salvador, wiring money to them in El Salvador.

4            So essentially that's what the proof at trial

5    would show.

6            THE COURT:  I understand what the charges are

7    against him.

8            In connection with proving up his involvement in

9    the conspiracy to murder Ms. Arguetta, as well as the

10   accessory after the fact, why would all these details that

11   Ms. Macedonio was pointing to, why would they be necessary

12   to prove up those charges against him?

13           MR. DURHAM:  They may or may not, your Honor.

14           Part of it is ballistic evidence was recovered

15   at the scene of the Arguetta and Torres murders and that

16   evidence links to the Moreno murder as well as the Quijada

17   murder.

18           The gun found at the Quijada scene was used to

19   murder Moreno and also used to murder Arguetta and Torres.

20           The shell casings recovered at the scene, the

21   ballistics expert will testify that the shell casings

22   recovered at the scene of the Arguetta and Torres murder

23   matched the Moreno murder and were fired from the gun

24   recovered at the scene at the Quijada murder.

25           THE COURT:  Let me see if I can focus it more.

5

1          I don't know whether they challenge that the

2    murders took place.  I assume not.

3          I understand the Government has to prove the

4    underlying murder for the accessory after the fact.

5    That's an element in proving that.

6          If that's not going to be an issue in the case

7    because they're not challenging that, you can still put on

8    limited testimony regarding the fact that a murder or two

9    murders took place.

10         I don't understand why it would be necessary to

11   go into the details of what happened with respect to Diego

12   Torres to prove the crimes that are charged against him.

13   That's the bottom line question.

14         I don't know who your witnesses are.  You're

15   going to have someone testifying he was involved in the

16   actual murders, or is it through other proof?

17         MR. DURHAM:  A lot of the proof on that would be

18   through the defendant's own statements, his confession to

19   the Suffolk County Police Department.  He confessed -- not

20   only to the Suffolk County Police Department as well as

21   the FBI -- he confessed to having prior involvement and

22   knowledge.  They were plotting to kill Ms. Arguetta and

23   also providing assistance as an accessory after the fact.

24         Part of that is the individuals who carried out

25   the murders told him what happened and essentially

1    imparted the knowledge upon him and, therefore, knew they

2    had done those murders.  So when he provided them

3    assistance, that would establish he was a knowing and

4    voluntary participant in the accessory after the fact

5    charge.

6              THE COURT:  His statement, he admitted in his

7    statement that he was told the details of what happened

8    with respect to the murder; is that part of his statement?

9              MR. DURHAM:  Yes, your Honor.

10             THE COURT:  Including with respect to Diego

11   Torres?

12             MR. DURHAM:  I believe so, your Honor.  I have

13   to double check the statement.  I don't have it in front

14   of me.

15             There is some discussion in terms of how the

16   murders were carried out.  I don't know if it goes to the

17   level of detail that Ms. Macedonio brought out in her

18   motion about the child and the diapers and what not, but

19   he does acknowledge knowing who carried out the murders

20   and having knowledge how the murders were carried out.

21             THE COURT:  In terms -- so his statement -- is

22   there other proof, other than proving up that the murder

23   happened through cooperating witnesses or otherwise, where

24   his knowledge of the details with respect to how the

25   murder was carried out would come up, or essentially it

1    would be with respect to his statement?

2              MR. DURHAM:  Primarily it would be with respect

3    to his statement.

4              We would need to put in some evidence from the

5    crime scene to establish that two murders occurred and

6    certain evidence was recovered which then links to the

7    other crime scene.

8              THE COURT:  Okay.  Is there anything else you

9    want to add on the issue?

10             MR. DURHAM:  I'm going to grab a copy of

11   Mr. Martinez' statement.

12             THE COURT:  Ms. Macedonio, I think you

13   understand what I'm trying to figure out.

14             MS. MACEDONIO:  It's exactly the problem we

15   have.  While I understand that the government, you know,

16   he's charged with being an accessory after the fact and

17   the government will have to prove that up.

18             The problem that we have is I think it's

19   entirely unnecessary for the government to have to

20   establish that there was a murder of a two year old child.

21   They could simply establish that there was another

22   individual killed.

23             He's not charged with, nor did I advance that he

24   was charged with in my papers, the murder or the murder

25   conspiracy of Diego Torres.

1          The inflammatory nature of how they having

2    photographs or testimony about the brutal killing of a 14

3    month old little boy is entirely unnecessary for a count

4    that's an accessory after the fact when we have three

5    other murders that the defendant is charged with.

6          And in light of recent events, most of which

7    took place in Connecticut, we can go on and on about gun

8    violence in this country, that's going to be something

9    that really is sticking in the minds of these jurors and

10   there's a way to cure it.

11         First of all, the counts could be severed.

12   There's another defendant who is actually the shooter in

13   that, in those counts, Mr. Guzman, who is going to be

14   tried at a later time.

15         Those particular counts against Mr. Martinez

16   could be severed from this trial, thereby eliminating the

17   prejudice against both Mr. Martinez and Mr. Ortega.

18         Mr. Martinez could be tried on those counts with

19   Mr. Guzman at a later time, or the government could simply

20   strictly curtail what it is that they're going to elicit

21   from their witnesses, particularly in light of the fact

22   that he's not charged with the murder conspiracy of Diego

23   Torres.

24         THE COURT:  I understand what you're saying.

25   There's two problems with severing it and putting him into

9

1    the Guzman trial for that charge.  Those details are going

2    to come out at the Guzman trial, at least with respect to

3    that charge that's what would happen at the Guzman trial

4    for sure.

5            MS. MACEDONIO:  Understood, but then there would

6    be no prejudice to spillover with the count that remains

7    in this case.

8            THE COURT:  I understand that.

9            The other issue is with respect to that is as

10    you know the conspiracy with respect to that is part of

11    the racketeering count in this case.  The government is

12    allowed to show a pattern.

13            They have to show your client was engaged in a

14    pattern of racketeering activity.  For you to say to me

15    sever that racketeering act out, puts them at a

16    disadvantage because they have less than a pattern to show

17    the jury.

18            In a racketeering case I'm not aware of any case

19    law that says that you should strip a racketeering act out

20    because the nature of racketeering act, that murder

21    conspiracy to murder is worse than some of the other ones

22    because it could undermine the government's ability to

23    prove a pattern and in each case they have half of a case

24    in one trial and half of a case in another.  What's your

25    response to that?

1         MS. MACEDONIO:  I understand the court's

2   concern.  I also have, in focusing on what your Honor your

3   inquiry that the Court had with regard to Mr. Durham and

4   why it's necessary to bring out all of these details with

5   regard to the child.

6         THE COURT:  I don't think it's a severance

7   issue.  I think they have a right to prove up these crimes

8   together.  It's a Rule 403 issue with respect to what

9   details are necessary in an accessory after the fact case

10  if you were charged with murder.  He's charged with being

11  an accessory, so that's why I asked the government those

12  questions.  I want to point out why I think severance is

13  not the answer to this.  I really think it's a question of

14  403.

15        Ms. Rantala, your client has different issues.

16  Part of it is on what details are going to come out

17  obviously in connection with that particular racketeering

18  act.  I understand he's not charged with any aspect of

19  that crime either accessory or otherwise.  Some of the

20  arguments you make hinge upon what kind of details are

21  going to come out with respect to Diego Torres, right?

22        MS. RANTALA:  Yes.

23        And basically to reiterate to the Court he's not

24  charged with that particular conspiracy and any kind of

25  spillover affect would definitely be more prejudicial and

1    override any interest in judicial economy on Mr. Ortega's

2    part and 404 concerns are great as to Mr. Ortega.  He

3    should not be tried after the New Town massacre and all

4    these other issues and the jurors having to be filled with

5    that kind of information and then this child is only 14

6    months.  That's absolutely prejudicial.  I don't know that

7    any normal juror could even overlook that and look at

8    these two individuals differently.  How could Mr. Ortega

9    be involved in this sort of conspiracy related to another

10   conspiracy to murder a child, how could they -- how could

11   a jury possibly keep those two separate and apart.  The

12   spillover affect is completely prejudicial.

13            THE COURT:  Okay.  Let me ask, if you look

14   through the statement, what details are in the post-arrest

15   statement, Mr. Durham?

16            MR. DURHAM:  Your Honor, it's fairly lengthy.

17            The individuals that carried out the murder

18   describe to Mr. Martinez how they carried out the murder

19   which Mr. Martinez, when he's interviewed by Suffolk

20   County Police Department, he relays to them.  There are

21   references in there to essentially the baby being killed.

22   Some of it is just references to the woman or Vanessa or

23   Diego which doesn't elucidate the fact you're talking

24   about the two year old child.  In other portions he does

25   say the baby.  That is in the signed written statement.

1           Just to follow-up on your Honor's point, if the

2    Court were to sever the Arguetta and Torres murders out of

3    this trial, the government would be unable to prove the

4    racketeering count at the secondary trial.  If we went to

5    trial on the first two predicates, we would be left with a

6    single offense at the follow-up trial and we wouldn't have

7    a second predicate.  Mr. Martinez is charged with three

8    predicate acts in the underlying indictment.  To do so,

9    obviously, we could try to get the evidence as 404(b) or

10   something to that effect, but it would significantly

11   hinder our ability to bring this prosecution.

12           THE COURT:  I understand that point but I think,

13   again, given what the charge is here and if that's his

14   statement and those couple references to the baby are the

15   only aspects of this trial that would make reference to

16   the age of the victim, I want the government to try and

17   see if there's a way they could prove this up without

18   getting into that issue.

19           It's not clear to me, and given what the charges

20   are against Mr. Martinez, given what the nature of the

21   government's proof is, that there can't be a way to work

22   around that because it creates not just an issue for him,

23   but obviously creates issues for Mr. Ortega who is not

24   charged with any aspect of that.  It will create issues in

25   jury selection in terms of jurors who might otherwise

1    think they could be fair and impartial and upon hearing

2    that will say yes I don't think I could be fair and

3    impartial.  It will complicate the jury selection and

4    create issues with respect to Mr. Ortega and obviously

5    with respect to Mr. Martinez itself even though his crimes

6    have to be kept -- not have to be, should be kept together

7    because of the issues that we have discussed in terms of

8    the government's obligation under the law to prove a

9    pattern of racketeering, and that does not mean that the

10   government needs to elicit these details in order to prove

11   that pattern especially, Ms. Macedonio, you're not going

12   to be challenging that the murder happened, right?

13           MS. MACEDONIO:  No, your Honor.

14           THE COURT:  Obviously there's case law.  If you

15   want to enter into a stipulation.  The government is

16   entitled to prove it's case but given all these issues I

17   want to go back and read the statement but I also want the

18   government, because I want time to think about this to see

19   if the government is willing to agree that for purposes of

20   this trial that obviously there will be plenty of

21   testimony that relates to any conspiracy.  There's no

22   limitations on the evidence with respect to conspiring to

23   kill Ms. Arguetta or killing of Ms. Arguetta or

24   discussions afterwards or the statement with respect to

25   that.  I want the government to try and find a way to,

1   even if there's reference that a second individual was

2   killed during that murder, to take out any reference to

3   the age of the victim.

4        MR. DURHAM:  Yes, your Honor.  I hadn't thought

5   through exactly what evidence we would need to curtail

6   along those lines.

7        THE COURT:  I'm referring to the severance

8   motion.  I want to see what your answer is to that before

9   I decide that.

10        MR. DURHAM:  With respect to the written

11   statement, obviously that statement was taken in English.

12   All the other statements in this case were Spanish

13   statements.  We would prepare typewritten redacted

14   versions of those to respond to the Bruton issues.   One

15   possibility might be to similarly take the handwritten

16   signed statement, prepare a typed written version.  It

17   won't seem unusual to the jury because the other statement

18   that will be admitted into evidence will be typed in the

19   same format.  It won't necessarily raise a flag.

20        I would ask the Court to allow us to think it

21   through.  I almost have to go through witness by witness

22   and exhibit by exhibit to see what we will be able to --

23   how we could curtail any unnecessary prejudice.

24        THE COURT:  That's fine.  On issues like that

25   you could speak to Ms. Macedonio about whether she's

1    satisfied with any redactions or other things you have to

2    do to address that issue, and she obviously might even

3    agree to some type of stipulation with regard to the

4    second individual that there be some stipulation to the

5    jury that in the course of the murder of Vanessa Arguetta,

6    a second individual was killed and leave it at that.

7           Is there anything else before we -- I'm

8    reserving on the severance and we will discuss that at the

9    conference next week.  Anything else before we complete

10   that issue?

11          I'm now going to go into the issues of

12   Mr. Ortega's motion.  The hearing will be the last issue.

13   You're free to stay.  Do you want to stay for this?  It's

14   up to you.

15          MS. MACEDONIO:  No, your Honor, with all due

16   respect I would like to leave.  If we are going to set a

17   status conference for next week, can we do that now?

18          THE COURT:  Yes.  2:00 on the 23rd.

19          MS. MACEDONIO:  That's fine.  Thank you, Judge.

20          MR. DURHAM:  Thank you.  Your Honor, is there

21   any way the Court can do it a little bit earlier; 1:30,

22   1:00?

23          THE COURT:  1:00.

24          MS. MACEDONIO:  Thank you.

25          THE COURT: 1:00 on January 23rd and obviously we

1    will discuss the questionnaire.  I'll come back to the

2    issue of the government's expert and we will need to

3    address this issue, the severance issue as well.

4              MS. MACEDONIO:  Thank you, your Honor.

5              THE COURT:  Marshals, you can take Mr. Martinez

6    back.

7              (Proceedings in this matter are concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25